```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
   DNF ASSOCIATES, LLC,

                                   Plaintiff,           1:23-cv-8655-GHW

            -against-                        MEMORANDUM
                                                          OPINION & ORDER
   HSBC BANK USA, N.A.,

                                  Defendant.
------------------------------------------------------------------- X
GREGORY H. WOODS, United States District Judge:

       Plaintiff DNF Associates, LLC ("DNF") buys defaulted loans for collection. DNF entered into an agreement with Defendant HSBC Bank USA, N.A. ("HSBC") to purchase accounts that the bank had charged off. The agreement required that HSBC provide DNF files containing data that it had collected regarding the accounts that it sold. And, under certain circumstances, the agreement required HSBC to repurchase accounts that it had sold to DNF. DNF asserts that HSBC breached their agreement by failing to provide it with those data files, and by failing to repurchase eligible accounts. On April 26, 2024, Judge Valerie Figueredo issued a thoughtful report and recommendation, recommending that the plaintiff's claim be dismissed. However, because the Court agrees with DNF's objection that the report's recommendations were based on an unduly constrained reading of the facts pleaded in its complaint, and the nature of the claim asserted in it, the Court does not adopt the report in its entirety, and, instead, denies HSBC's motion to dismiss in full.

    **I.    BACKGROUND**

       The Court refers the reader to the Report & Recommendation issued by Judge Figueredo on April 26, 2024 (the "Report").[1] Dkt. No. 36. The Report contains a comprehensive description of

---

[1] Terms used without definition in this opinion have the meaning set forth in the Report.

the procedural history of the case and the facts alleged in the operative complaint. Nevertheless, the Court will briefly review the procedural history relevant to this motion.

### A.     The Complaint

Plaintiff DNF Associates, LLC filed this action on October 2, 2023. Dkt. No. 1. DNF later filed an amended complaint, which remains the operative complaint in this action. Dkt. No. 10 (the "Complaint"). In its Complaint, DNF alleges that Defendant HSBC Bank USA, N.A. breached a contract between the parties related to the purchase and sale of a series of consumer credits that had been charged off by the bank. *Id.* ¶¶ 10–11, 32–38. That Agreement, which is at the core of this litigation, was entered into between the parties on October 7, 2022 (the "Agreement"). *Id.* ¶ 10.

The Complaint contains a single claim for breach of contract. *Id.* ¶¶ 32–38. It identifies the two provisions of the Agreement that were allegedly breached. First, DNF alleges that "HSBC breached the Agreement when it failed [to] undertake reasonable efforts to provide the information identified for the Data File." *Id.* ¶ 35. The provision of the Agreement that HSBC allegedly breached as a result of that failure is Section 2.4. *Id.* ¶ 12. Section 2.4 of the Agreement reads as follows:

> Delivery of Data File. Immediately following Seller's receipt of the Closing Date Payment with respect to a Closing or as soon as practicable thereafter, the Seller shall deliver the related Data File and an executed Assignment and Bill of Sale to Purchaser.

Agreement § 2.4.

Second, DNF alleges that "HSBC further breached the Agreement when it failed to repurchase the Accounts identified by DNF." Complaint ¶ 36. The provision of the Agreement that DNF alleges requires the repurchase of the Accounts is Section 5.1. That section of the Agreement reads in pertinent part as follows:

> Repurchase. On written request made by Purchaser, the Seller agrees to repurchase any Account and all related Records in respect of which, prior to the related Closing, one or more of the following has occurred: . . . (vii) the Account or the Account balance cannot be validated via the Records provided by Seller and the

2

> Seller is unwilling or unable to provide a "Debt Sale Affidavit" and an "Affidavit Regarding Debt" substantially in the form attached as Schedule F, and Schedule G.

Agreement § 5.1.

The Agreement also contains a separate provision—Section 3—containing representations and warranties made by the parties in connection with the transaction. Section 3(b) contains seven specific representations made by HSBC, as the seller of Accounts under the Agreement. Without a preceding section break or heading, the following language follows that list of representations:

> THE FOREGOING REPRESENTATIONS AND WARRANTIES OF THE SELLER ARE GIVEN ON THE UNDERSTANDING AND WITH THE PURCHASER'S EXPRESS ACKNOWLEDGMENT THAT THE PURCHASED ASSETS ARE PURCHASED BY THE PURCHASER ON AN "AS IS, WHERE IS" BASIS AND WITHOUT RECOURSE TO THE SELLER (UNLESS OTHERWISE PROVIDED HEREIN), AND EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 3.1(B) THE SALE OF THE ACCOUNTS IS MADE WITHOUT REPRESENTATION, WARRANTY, OR GUARANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, AND ACCORDINGLY, WITH RESPECT TO EACH PURCHASED ASSET, THE PURCHASER'S AGGREGATE DAMAGES FOR ANY BREACH OR BREACHES OF SUCH REPRESENTATIONS AND WARRANTIES ARE LIMITED TO THE PURCHASE PRICE OF EACH AFFECTED PURCHASED ASSET, BEING THE APPLICABLE PURCHASE PRICE PERCENTAGE MULTIPLIED BY THE OUTSTANDING BALANCE OF EACH AFFECTED ACCOUNT AT THE APPLICABLE DATE OF CLOSING. FURTHER, THE SELLER SHALL NOT BE RESPONSIBLE FOR THE PAYMENT OF ANY DAMAGES SUFFERED BY THE PURCHASER IN CONNECTION WITH A BREACH OR BREACHES OF SUCH REPRESENTATIONS AND WARRANTIES OR ANY OTHER DAMAGES SUFFERED BY THE PURCHASER AS A RESULT OF A BREACH OF OR IN CONNECTION WITH THIS AGREEMENT IN AN AGGREGATE AMOUNT IN EXCESS OF THE PURCHASE PRICE FOR THE AFFECTED ACCOUNTS AS SET FORTH IN SECTION 2.2 HEREOF.

Agreement § 3.

### B. The Motion to Dismiss

On December 8, 2023, Defendant moved to dismiss the Complaint. Dkt. No. 17 (notice of motion); Dkt. No. 19 (memorandum of law or "Mem."). Defendant presented two principal arguments in support of its motion. First, Defendant argued that DNF had failed to satisfy a condition precedent to its obligation to repurchase the Accounts. Defendant contended that:

3

"DNF was required to present the Account(s) to HSBC and *give HSBC the option* of executing a 'Debt Sale Affidavit' along with an 'Affidavit Regarding Debt' **for any Account it could not validate**. The Complaint lacks any allegation that DNF did so." Mem. at 7 (bold emphasis in original; italicized emphasis added). Second, it argued that "*to the extent* Plaintiff's breach of contract claim is masquerading as one for breach of warranty, the Agreement contains extensive disclaimers making clear that the accounts DNF purchased were sold to it without any general warranties." *Id.* at 2 (emphasis added). Third, HSBC argued that DNF's claim for consequential damages as a result of its lost profits was too speculative and should be "dismissed." *Id.* at 10–12.

DNF opposed the motion on January 12, 2024. Dkt. No. 28 ("Opp."). In opposition to HSBC's first argument, DNF highlighted that the Complaint alleged that DNF had provided HSBC an Excel spreadsheet identifying the relevant Accounts. *Id.*; *see also* Complaint ¶ 21. Moreover, DNF argued that HSBC's argument grafted into Section 5.1 a precondition that was not included in the text—namely HSBC's argument that DNF had to provide it a specific opportunity to provide the affidavits, rather than simply making the repurchase request and identifying the accounts which it could not validate. In response to HSBC's second argument, DNF advanced a simple rejoinder—it was not making a claim for breach of warranty: "DNF has stated a breach of contract claim based upon HSBC's failure to provide the Dat[a] File information required in the Agreement." Opp. at 6. Finally, DNF asserted that dismissal of its claim for consequential damages in response to the motion to dismiss would be premature. *Id.* at 14.

### C. The Report and its Recommendations

Judge Figueredo issued the Report on April 26, 2024. The Report recommended that the Court grant HSBC's motion to dismiss DNF's claim for breach of contract as it related to HSBC's alleged failure to provide Data Files under the Agreement. The Report noted that DNF was asserting its claim because "HSBC was required to provide certain information in the Data File, but failed to do so." Report at 8. The Report, however, then went on to cabin DNF's claim as one for

4

a breach of the seller's representations and warranties. *Id.* ("HSBC, however, points to the warranty provision in the Agreement . . . and argues that the provision precludes this claim. . . . HSBC is correct."). Framed in this light, the Report concluded that the limitation of liability provision contained in Section 3(b) of the Agreement precluded DNF's claim. *Id.* at 8-9. Because the Report interpreted the plaintiff's claim regarding HSBC's failure to provide the Data Files as being barred by the language of the Agreement, the Report did not recommend granting the plaintiff leave to amend the complaint to cure the deficiency.

The Report also recommended dismissal of DNF's claim under Section 5.1 of the Agreement because, it reasoned, the plaintiff had not adequately pleaded that the conditions precedent to HSBC's repurchase obligations had been satisfied. *Id.* at 10. The Report construed Section 5.1 of the Agreement to "impose two conditions before HSBC's repurchase obligation is triggered. *Id.*. "First, DNF had to present the Accounts that could not be validated to HSBC." *Id.* "And, second, HSBC had to be unwilling or unable to provide the listed affidavits." *Id.*

The Report found that the plaintiff had adequately pleaded that it had identified the Accounts that it wished for HSBC to repurchase. *Id.* However, the Report concluded, the plaintiff had not pleaded that HSBC was "unwilling or unable to provide a 'Debt Sale Affidavit' and an 'Affidavit Regarding Debt', as required under Section 5.1(vii) of the Agreement." *Id.* at 11. The Report acknowledged that the Complaint alleged that HSBC had "refused to repurchase the Accounts." *Id.* But the Report reasoned that the allegation that HSBC refused to repurchase the Accounts was insufficient to permit the Court to draw the inference that "HSBC did not provide, or was unwilling to provide, the affidavits . . . ." *Id.* The Report recommended granting leave to amend the Complaint to cure this perceived deficiency.

Finally, the Report recommended denying the defendant's motion to dismiss the plaintiff's demand for consequential damages. Because, "a motion to dismiss is addressed to a 'claim' – not to a form of damages," the Report found that the proposed motion "to dismiss this form of damages is

5

"'procedurally premature.'" *Id.* (first quoting *Loadholt v. Shirtspace*, No. 22-CV-02870 (ALC), 2023 WL 2368972 (S.D.N.Y. Mar. 6, 2023) and then quoting *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 345 (S.D.N.Y. 2023)).

### D.     The Objections

Both parties filed timely objections to the Report.  HSBC took issue with the Report's determination that the plaintiff's claim for consequential damages should not be dismissed.  Dkt. No. 39.

DNF objected to the Report's conclusion that its breach of contract claims should be dismissed.  Dkt. No. 40 ("P's Objections") at 7.  With respect to the recommendation that its claim based on HSBC's alleged failure to provide the Data Files, DNF argued that the Report "is based on the misapprehension that DNF's Data File claim is based on some deficiency in the 'condition' of the Data Files HSBC provided.  This is incorrect." *Id.*  Instead, DNF argued, its claim was based on HSBC's alleged failure to provide the files as required by Section 2.4 of the Agreement, which required that HSBC transfer "all of the Data File information in its possession . . . ." *Id.* at 9.

With respect to the Report's recommendation that DNF's claim that HSBC breached its obligation to repurchase the Accounts be dismissed, DNF raised two arguments.  The first is based on an incorrect interpretation of the Report.  DNF argues that the Report errantly imposed a requirement "whereby DNF must specifically 'ask' for the affidavits . . . ." *Id.* at 13.  However, as outlined above, the Report's recommendation is not based on the conclusion that DNF must specifically "ask" HSBC for affidavits.  The Report described HSBC as having argued that the Agreement should be interpreted to require such a request.  But the Report did not adopt that position.  *See* Report at 9 ("HSBC acknowledges that it has a repurchase obligation in certain limited circumstances, but avers that the obligation was not triggered here because DNF did not ask HSBC to provide affidavits validating the account balances.").  Instead, the Report concluded that the Agreement contained two preconditions:  (1) "that DNF provide a 'written request' that HSBC

repurchase any Accounts" and (2) "HSBC's unwillingness or inability to provide the stated affidavits." *Id.* at 12. As described above, the Report concluded that the plaintiff had failed to adequately plead that HSBC was unwilling or unable to provide the affidavits (condition 2), not that HSBC was required to make a separate request in addition to the request that HSBC repurchase the Accounts (condition 1). So DNF's first argument attacks a strawman.

DNF's second argument regarding the Report's conclusion that DNF's repurchase claim should be dismissed hits the mark. DNF argues that the Complaint "does allege facts sufficient to plausibly support the conclusion that HSBC had demonstrated its inability and/or unwillingness to provide debt affidavits before DNF issued its repurchase request." P's Objection at 16. DNF's objections point to a series of allegations in the Complaint that would support the plausibility of a general allegation that the conditions precedent to HSBC's repurchase obligations were satisfied. *Id.* at 16–17. DNF also pointed to the text of the April 11, 2023 letter by its counsel requesting that HSBC repurchase the Accounts. *Id.* at 17. In that letter, counsel requested "*again* that the Bank repurchase each of these Accounts at issue." Dkt. No. 18-2 ("April 11 Letter") at 3 (emphasis added).[2]

Each of the parties filed timely responses to the other's objections. Dkt. Nos. 44, 45. Unsurprisingly, each party's responses supported the Report's conclusions to the extent that they were favorable. While attacking the plaintiff's objections, HSBC also argued that the Report's recommendation that DNF be permitted to amend the Complaint to cure any deficiency with respect to the repurchase claim was unsound. Dkt. No. 44 at 1. HSBC argued that granting leave to amend would be futile; it argued that DNF would never be able to cure the deficiency because DNF never expressly asked HSBC to provide affidavits regarding the Accounts. Dkt. No. 44 at 7–8.

---

[2] The April 11 Letter is specifically referenced in paragraphs 30 and 31 of the Complaint and is integral to it. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

7

## II.     LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). The Court also reviews for clear error those parts of the report and recommendation to which no party has timely objected. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008); 28 U.S.C. § 636(b)(1)(A).

## III.    DISCUSSION

Both parties' objections are sufficiently precise to merit *de novo* review. Neither party, however, objects to the Report's description of the governing legal standards applicable to the Court's review of a motion to dismiss, the elements of a claim for breach of contract, or the requirements to plead the satisfaction of a conditions precedent. Report at 5–7. Nor do they object to the accuracy of the Report's description of the legal effect of a contractual disclaimer of representations and warranties. *Id.* at 9. The Report's careful explanations of those legal standards are accurate, and the Court adopts them for purposes of this opinion. The parties dispute not the

8

governing legal principles articulated in the Report, but, rather, the Report's application of them to the allegations in the Complaint, and the interpretation of the relevant portions of the Agreement. And it is in those areas that the Court diverges in part from the recommendations contained in the Report.

### A. Plaintiff's Data File Claim Was Not Disclaimed And Should Not Be Dismissed

DNF's breach of contract claim related to the Data Files should not be dismissed. DNF's breach of contract claim resulting from HSBC's alleged failure to provide the Data File arises under Section 2.4 of the Agreement. The disclaimer language in Section 3 of the Agreement simply does not apply to Section 2.4. It is contained in a separate section of the Agreement. Section 3 provides that the "Purchased Assets" are purchased on an "as is" basis, but it does not exculpate HSBC from its obligation to provide the information required by Section 2.4 of the Agreement within the time period established by it.

The Court departs from the Report's recommendation because the Report assumed that DNF's claim related to the Data Files was a claim for breach of the representations and warranties under Section 3.1 of the Agreement. That assumption was incorrect, however, as the Complaint—and the plaintiff in its arguments—makes clear that the plaintiff's breach of contract claim related to the Data Files arises under Section 2.4 of the Agreement, not 3.1. It is worthy of note that HSBC never made the argument in its motion to dismiss that Section 3 of the Agreement had the effect of relieving it from liability for a claim asserted under Section 2.4. Instead, HSBC argued that the claim should be dismissed "*[t]o the extent* Plaintiff's breach of contract claim is based on HSBC's alleged breach of warranties made by it in Section 3.1 of the Agreement . . . ." Mem. at 8 (emphasis added). Since the plaintiff's breach of contract claim is not based on the alleged breach in Section 3.1 of the

Agreement, the basis for HSBC's motion to dismiss this claim is unsound. Therefore, the motion to dismiss the claim is denied.[3]

### B. Plaintiff Has Adequately Pleaded Satisfaction of the Conditions Precedent to HSBC's Repurchase Obligations

The plaintiff has adequately pleaded that the conditions precedent to HSBC's repurchase obligations were satisfied. The Court agrees with the Report's framing of the issue, and with one half of the Report's conclusions. DNF was required to plausibly plead that two conditions precedent to HSBC's repurchase obligations were satisfied. The Court agrees with the Report's conclusion that the Complaint adequately pleads that DNF sufficiently identified the Accounts that could not be validated. As the Report states, the "allegations in the amended complaint explain that after DNF identified certain accounts that could not be validated, DNF presented HSBC with a list of those accounts." Report at 10. As detailed in the Report, the allegations in the Complaint "are sufficient to plausibly allege that DNF fulfilled this condition precedent." *Id.*

However, the Court declines to follow the Report's conclusion that "the amended complaint contains no allegations that the second condition precedent was satisfied—that HSBC was 'unwilling or unable to provide a Debt Sale Affidavit' and an 'Affidavit Regarding Debt,' as required under Section 5.1(vii) of the Agreement." *Id.* at 11. The Report found that the Complaint's allegations were insufficient because "[n]owhere in the amended complaint does DNF allege that HSBC was unwilling or unable to provide such affidavits." *Id.* The Report determined that the

---

[3] The plaintiff has accepted for purposes of briefing this motion that the Data Files are part of the "Purchased Assets" that are subject to the representations and warranties contained in Section 3 of the Agreement. *See, e.g.*, P's Objections at 2 ("First, [HSBC] failed to provide the required Data File information, which was part of the 'Purchased Assets.'"). However, the Court observes that the definition of the "Records" that comprise part of the "Purchased Assets" expressly "excludes the Seller's computer systems and any data maintained thereon." Agreement at 3. And the Court is unprepared to take a position on this record that the information required to be included in the Data Files would constitute "other documentation that may be used by Seller to evidence financial responsibility for an Account . . . ." *Id.* To the extent that the parties present further briefing to the Court regarding the capacity of Section 3.1 to limit HSBC's liability with respect to the Data Files, the Court expects to request that they brief the question of whether the "Data Files" constitute "Records," as defined in the Agreement.

10

mere allegation that HSBC "refused to repurchase the Accounts" was insufficient to adequately plead the satisfaction of the condition. *Id.*

The Court parts ways with the Report because, drawing all inferences in the plaintiff's favor, the allegations in the Complaint are sufficient to make plausible the satisfaction of the condition precedent that HSBC was unwilling or unable to provide the affidavits. In particular, in the April 11 Letter, DNF's counsel described an earlier request that HSBC repurchase the relevant Accounts. April 11 Letter at 3 ("Due to the Bank's failure to resolve the issues outlined above, the Company hereby is requesting *again* that the Bank repurchase each of these Accounts at issue." (emphasis added)). Because Section 5.1(vii) provides HSBC the opportunity to provide affidavits rather than repurchasing the Accounts, its election not to repurchase the Accounts in response to DNF's request permits the reasonable inference that it was either unwilling or unable to pursue the alternative path—providing the affidavits permitted under Section 5.1.

### C. Striking Plaintiff's Demand for Consequential Damages is Premature

The Court agrees with the Report's conclusion that Defendant's application to strike Plaintiff's demand for consequential damages is premature. "Though courts often address the issue of lost profits at the summary judgment stage, New York courts have dismissed claims for lost profits where the pleadings suggest that an award of lost profits would require an unreasonable level of speculation." *ACCD Glob. Agric. Inc. v. Perry*, No. 12 CIV. 6286 KBF, 2013 WL 840706, at *6 (S.D.N.Y. Mar. 1, 2013). This is not such a case: the Court cannot conclude at this stage that an award of lost profits would require an unreasonable level of speculation. The plaintiff alleged that it is "in the business" of purchasing portfolios of charged off accounts. Complaint ¶ 9. It is not a newly established business, operating under a new or untested business plan. *Cf. ACCD Glob. Agric. Inc. v. Perry*, No. 12 CIV. 6286 KBF, 2013 WL 840706, at *6 (S.D.N.Y. Mar. 1, 2013). Nor does the Complaint plead facts that establish that any consequential damages would not be susceptible to calculation. Consequently, the motion to dismiss Plaintiff's request for that category of damages is

properly denied. Plaintiff's entitlement to consequential damages is best tested in the context of a motion for summary judgment, after the parties have had the opportunity to develop the factual record.[4]

Nor should Plaintiff's request for an award of consequential damages be dismissed as a result of the limitation on liability language contained in Section 3.1 of the Agreement at this time. That provision caps the aggregate amount of damages available for a breach of the contract. Agreement § 3.1 ("THE SELLER SHALL *NOT* BE RESPONSIBLE FOR THE PAYMENT OF . . . ANY OTHER DAMAGES SUFFERED BY THE PURCHASER AS A RESULT OF A BREACH OF OR IN CONNECTION WITH THIS AGREEMENT *IN AN AGGREGATE AMOUNT IN EXCESS OF THE PURCHASE PRICE FOR THE AFFECTED ACCOUNTS . . . .*") (emphasis added). But its text does not limit the *type* of damages that are recoverable within that dollar cap. Therefore, Section 3.1 of the Agreement on its own does not deprive the plaintiff of the opportunity to pursue its asserted consequential damages. The effect of the limitation of liability provision, if any, must be determined at a time when the aggregate amount of damages is supported by a factual record, not allegations in the complaint alone.[5]

## IV.    CONCLUSION

For these reasons, the Court adopts Judge Figueredo's Report in part. HSBC's motion to dismiss DNF's claims is DENIED in its entirety.

---

[4] The defendant does not contend that DNF's claim for direct damages is inadequately pleaded. *See* Complaint ¶ 37. Granting the defendant's motion at this time would not result in the dismissal of DNF's claim for breach of contract.
[5] DNF does not dispute that the Agreement imposes an aggregate limit on the amount of its recovery, but argues that the limitation on liability provision in the Agreement is unenforceable. Dkt. No. 28 at 14-15. The Court has not decided that question because it is not necessary to do so in order to resolve the motion to dismiss.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 17.

SO ORDERED.

Dated: July 16, 2024
      New York, New York

                                                                GREGORY H. WOODS
                                                     United States District Judge